IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JONATHAN DORRIS                                                              PLAINTIFF

v.                               Case No. 1:10-cv-93-KGB

TXD SERVICES, LP                                                             DEFENDANT

**OPINION AND ORDER**

Plaintiff Jonathan Dorris brings this action pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA") against his former employer TXD Services, LP ("TXD"). Dorris alleges that TXD discriminated against him in violation of 38 U.S.C. § 4311. TXD has moved for summary judgment (Dkt. No. 14), Mr. Dorris has responded (Dkt. No. 23), and TXD has replied (Dkt. No. 28). For the reasons discussed below, TXD's motion is granted.

I.      **Factual Background**

Mr. Dorris began working for TXD on February 7, 2007. On April 10, 2007, Mr. Dorris received a Warning Order, which informed him that, as a member of the Arkansas Army National Guard, he would be activated in connection with Operation Iraqi Freedom. Mr. Dorris contends that he told his supervisor and an owner of TXD, Joe Poe, that he was being activated when he received notice and then again when he received a date certain for deployment. Mr. Dorris recalls specifically telling Mr. Poe because, in that same conversation, Mr. Dorris asked if TXD would make up the difference in his salary while he was on active duty. TXD declined to do so. Mr. Dorris also contends that he told several other TXD officials about his upcoming activation, including Billy King, James Kendrick, and drilling superintendent Greg Pierce, Sr.

Mr. Dorris's last day of work at TXD was September 11, 2007. Mr. Dorris was on active duty from October 1, 2007, until February 2009. While he was at training in October 2007, Mr. Dorris's wife notified him that he had received in the mail a "Notice of Your Continuation Coverage," which was intended to inform him of his rights under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). That notice, dated October 19, 2007, indicated that the event that triggered COBRA rights was "Termination of Employment." TXD's internal documentation regarding the end of Mr. Dorris's employment indicates that the "reason for termination" was that Mr. Dorris "quit" (Dkt. No. 14-4, at 1).

Upon learning of the COBRA letter, Mr. Dorris claims he made two phone calls. He first called TXD's Morrilton, Arkansas, office and asked why he "had received a letter from COBRA saying [he] was terminated" (Dkt. No. 26-1, at 9). Mr. Dorris alleges that he spoke with a TXD employee named "Amy" who told him that "we were told you were let go because you weren't showing up to work" (Dkt. No. 26-1, at 9-10). According to Mr. Dorris, after explaining that he had not quit but instead had been activated into uniformed service, "Amy" referred Mr. Dorris to the Dallas-Fort Worth office of TXD. Mr. Dorris called the Dallas-Fort Worth office the next day and spoke with Nydia Holowinski. Ms. Holowinski pulled Mr. Dorris's file and, according to Mr. Dorris, told him that "it says that you've been terminated for not showing up to work" (Dkt. No. 26-1, at 10). Mr. Dorris "explained to her that [he] had turned in orders . . . ." (Dkt. No. 26-1, at 10). Ms. Holowinski then told Mr. Dorris that she would have Mr. Poe call him back. The record is not clear whether Mr. Poe ever called Mr. Dorris back; Mr. Dorris contends he did not.

It is undisputed that while Mr. Dorris was on active duty, TXD sold substantially all of its assets to Foxxe Energy Holdings, LLC ("Foxxe"), and that, by February 1, 2008, TXD was no

longer a going concern. Mr. Dorris learned of this in August 2008 when he was home on leave. The parties do not dispute that, as a part of the asset sale, TXD provided Foxxe with a list of TXD's current employees. Foxxe was to use reasonable efforts to offer employment to them and did in fact interview the employees on the list. There were no unemployment claims made against TXD after the asset sale. (Dkt. No. 26-1, at 7-10).

It is also undisputed that Mr. Dorris was not mentioned on that list. Mr. Dorris claims "he was entitled to be on that roll of employees so that when he returned, he would immediately receive reasonable consideration from Foxxe as a potential employee" (Dkt. No. 26, at 7), but TXD asserts that it "did not consider individuals who were absent from employment due to long-term military commitment to be active or current employees" (Dkt. No. 28-2, at 1). TXD further asserts that "[i]n communications with third parties, TXD Services, LP would not include individuals serving long-term military commitments in any roster of current employees" (Dkt. No. 28-2, at 1).

Mr. Dorris returned from active duty in or around December 2008, having served approximately 15 months. Mr. Dorris contends he was ready to return to civilian work in December 2008 (Dkt. No. 23, at 1), although it is undisputed that he was on active duty until February 2009 (Dkt. No. 24, at 1-2). When he returned, Mr. Dorris discussed the possibility of obtaining employment with Rodney Silva of TXD Trucking, LP, which is a separate entity from TXD. Mr. Dorris also pursued employment with Foxxe upon his return. Mr. Dorris "spoke with Ed Clark about reemployment" (Dkt. No. 14-5, at 5). Mr. Clark told Mr. Dorris to apply. In April 2009, approximately two months after the end of his tour of duty, Mr. Dorris began to work for Foxxe at the site where he had previously been employed with TXD.

On November 15, 2010, Mr. Dorris filed his complaint, alleging that TXD had willfully violated the USERRA (Dkt. No. 1). Mr. Dorris did not indicate the specific provisions of the USERRA that TXD allegedly violated. TXD's summary judgment motion perceived this case largely as a failure-to-reinstate claim under 38 U.S.C. § 4312, but in his response, Mr. Dorris asserts this is a discrimination claim under 38 U.S.C. § 4311.

## II.   Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-moving party to establish by "specific facts" that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party." *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). An issue of fact is material only if it could affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## III.  Analysis

The purposes of the USERRA are:

> (1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service; (2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow

4

employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and (3) to prohibit discrimination against persons because of their service in the uniformed services.

38 U.S.C § 4301.

The USERRA is intended "to protect veterans' employment and re-employment rights." *Vander Wal v. Sykes Enters.*, 377 F. Supp. 2d 738, 745 (D.N.D. 2005). "Because USERRA was enacted to protect the rights of service members, it is construed broadly and 'in favor of its military beneficiaries.'" *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011) (quoting *Clegg v. Ark. Dep't of Corrections*, 496 F.3d 922, 930-31 (8th Cir. 2007)). The "essentially equitable" remedies available under the USERRA are: "reinstatement, any loss of wages or benefits, and if the employer's actions were willful, the court may require the employer to compensate the employee in an amount equal to the amount of lost wages or benefits as liquidated damages." *Vander Wal*, 377 F. Supp. 2d at 746 (citing 38 U.S.C. § 4323(d)). The USERRA "does not allow for the recovery of damages for mental anguish, pain or suffering, nor does USERRA allow for the recovery of punitive damages." *Id.*

### A.     Failure to Reinstate: 38 U.S.C § 4312

"USERRA protects returning veterans and other uniformed service members when transitioning to civilian life, requiring reemployment in either the same positions 'or a position of like seniority, status and pay, the duties of which the person is qualified to perform.'" *Lisdahl*, 633 F.3d at 717. The USERRA provides that "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits" of the USERRA if certain conditions are met. 38 U.S.C. § 4312(a). To qualify, the employee must: (1) give advance notice of such service; (2) not have a cumulative length of absence and of all previous absences exceeding five years; and (3) report to

submit an application for reemployment within 90 days after the completion of uniformed service. 38 U.S.C. 4312(a). 38 U.S.C. § 4313 provides that a person eligible for reemploymet under the USERRA "shall be promptly reemployed . . . in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, the duties of which the person is qualified to perform . . . ."

However, "[a]n employer is not required to reemploy a person . . . if . . . the employer's circumstances have so changed as to make such reemployment impossible or unreasonable." 38 U.S.C. 4312(d)(1)(A). The federal regulations interpreting the USERRA, which are promulgated by the Department of Labor, state:

> Even if the employee is otherwise eligible for reemployment benefits, the employer is not required to reemploy him or her if the employer establishes that its circumstances have so changed as to make reemployment impossible or unreasonable. For example, an employer may be excused from reemploying the employee where there has been an intervening reduction in force that would have included that employee.

20 C.F.R. 1002.139(a) (2012).

In his response to TXD's summary judgment motion, Mr. Dorris appears to abandon any claim under 38 U.S.C. § 4312 (Dkt. No 23, at 1, ¶ 3). Even considering this claim on the merits, however, it fails as a matter of law. As the parties both acknowledge, as of February 1, 2008, TXD was no longer a going concern. It no longer had employees, was not hiring new employees, and was not operating as a business. TXD maintains this was essentially a complete reduction in force that triggered the changed-circumstances defense. By the time Mr. Dorris returned from active duty in February 2009, TXD's circumstances had changed such that TXD's reemploying Mr. Dorris would have been impossible. In his response, Mr. Dorris does not argue

to the contrary.  On these facts, Mr. Dorris cannot prevail on a claim under 38 U.S.C. § 4312 against TXD.

The Court notes the possibility of successor liability because the USERRA definition of "employer" includes, under certain circumstances, a successor in interest.  "In general, an employer is a successor in interest where there is a substantial continuity in operations, facilities, and workforce from the former employer."  20 C.F.R. § 1002.35.  *See also Reynolds v. RehabCare Group E., Inc.*, 590 F. Supp. 2d 1107, 1114 (S.D. Iowa 2008).  In determining whether an employer is a successor in interest, courts consider certain factors and make a case-by-case determination.  *See Leib v. Georgia-Pacific Corp.*, 925 F. 2d 240 (8th Cir. 1991) (explaining and applying the factors).  The Court has not examined the factors to make a case-by-case determination here because successor liability cannot lie in this case; Mr. Dorris did not sue Foxxe, which succeeded TXD.  Moreover, Foxxe hired Mr. Dorris after he returned from active duty and applied for a position with Foxxe.

### B.    Discrimination: 38 U.S.C. § 4311[1]

The USERRA provides, in pertinent part:

> (a) A person who is a member of, . . . performs, . . . or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, . . . performance of service, . . . or obligation.
>
> . . . .

---

[1] The Court concludes that the statutory changed-circumstances defense to reemployment set out in 38 U.S.C. § 4312 does not apply to discrimination claims under 38 U.S.C. § 4311.  Although the Court is unaware of any controlling law on the issue, the Court is persuaded by the statutory construction of USERRA and the rationale applied by other courts that have examined this issue.  *See McLain v. City of Somerville*, 424 F. Supp. 2d 329, 336 (D. Mass. 2006) (analyzing this issue).

> (c) An employer shall be considered to have engaged in actions prohibited—
>> (1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service . . . .

38 U.S.C. § 4311.

By the plain language of 38 U.S.C. § 4311(c)(1), to trigger liability, a plaintiff must show that the his military status was a "motivating factor" in his employer's adverse employment action. The USERRA prohibits "discriminatory actions where the employee's military status is a 'motivating factor' in the decision, even if the employee's military status is not the sole factor in the decision." *Hill v. Michelin v. N. Am., Inc.*, 252 F.3d 307, 312 (4th Cir. 2001) (citing 38 U.S.C § 4311(c)(1)). Under the USERRA, military status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration. 38 U.S.C. §4311.

"If an employee establishes that his military status was a motivating favor in the employer's decision, USERRA then shifts the burden of proof to the employer, allowing the employer to avoid liability only if 'the employer can prove that the action would have been taken in the absence of' the employee's military status." *Hill*, 252 F.3d at 312 (citing 38 U.S.C § 4311(c)(1)); *see also Moore v. Epperson Underwriting Co.*, 2007 U.S. Dist. LEXIS 59796, at *19 (D. Minn. Aug. 15, 2007) ("Unlike the *McDonnell Douglas* framework . . . the procedural framework and evidentiary burdens set out in section 4311 shift the burden of persuasion, as well as production, to the employer."). The burden of proof is a preponderance of the evidence.

*Kirkendall v. Dep't of Army*, 479 F.3d 830, 867 (Fed. Cir. 2007). "In determining whether veteran status motivates the employer's conduct, all record evidence may be considered, including any explanation for the action taken." *Lisdahl*, 633 F.3d at 718. If an employer performs an act motivated by anti-military animus that is intended to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under the USERRA. 38 U.S.C. § 4311(a).

Federal regulations support this analytical framework. The Department of Labor has interpreted the USERRA's discrimination provisions to require the individual to show that the employer's action was motivated by, *e.g.*, "[m]embership or application for membership in a uniformed service" or "[p]erformance of service, application for service, or obligation for service in uniformed service." 20 C.F.R. § 1002.23(a). The regulations also provide that, "[i]f the individual proves that the employer's action was based on one of the prohibited motives listed in paragraph (a) of this section, the employer has the burden to prove the affirmative defense that the action would have been taken anyway absent the USERRA-protected status or activity." 20 C.F.R. § 1002.23(b).

In this case, Mr. Dorris claims TXD discriminated against him in violation of the USERRA by firing him and therefore not including his name on a list of employees that was a part of the asset sale between TXD and Foxxe. Mr. Dorris alleges that TXD was motivated by his military status when it fired him. He bases this on the COBRA letter he received which stated the event that triggered the COBRA letter was "Termination of Employment." After receiving this letter, Mr. Dorris placed two phone calls—one to TXD's Morrilton, Arkansas, office and one to the "home office" in Dallas, Texas—to inquire about the wording of the COBRA letter (Dkt. No. 26, at 7). He alleges that in both phone calls he was told he was

terminated because he was not showing up for work (Dkt. No. 26-1, at 9-10), although TXD's internal documentation of Mr. Dorris's exit indicates that he "quit" (Dkt. No. 14-4, at 1). Mr. Dorris then alleges that, because he was fired, he was not on a roll of employees TXD provided to Foxxe at the time of the asset sale. He claims "he was entitled to be on that roll of employees so that when he returned, he would immediately receive reasonable consideration from Foxxe as a potential employee" (Dkt. No. 26, at 7).

For purposes of this analysis, the Court must construe all facts in favor of Mr. Dorris and his claims. There are disputed issues of fact regarding whether TXD fired Mr. Dorris because of his military service. Even if the Court concludes that Mr. Dorris was fired by TXD because of his military service, however, the Court is not persuaded that on these unique facts this alleged act resulted in an action TXD would not have taken, regardless of Mr. Dorris's military service, or proximately caused an adverse employment action.

As to Mr. Dorris's contention that he was fired by TXD because of his military service, the Court, believing Mr. Dorris's evidence and drawing all justifiable inferences in his favor, as the Court is required to do at the summary judgment stage, concludes Mr. Dorris has demonstrated there is an issue of fact as to whether TXD fired him for his military service. Discriminatory motivation under the USERRA may be reasonably inferred from the proximity in time between military service and an adverse employment action and inconsistencies between proffered reasons and other actions of the employer. 38 U.S.C.A. § 4311 (c)(1).

The Court clarifies it is not persuaded that the COBRA letter, in itself, constitutes discrimination under 38 U.S.C. § 4311. Mr. Dorris cannot make out a viable claim that TXD discriminated against him in violation of the USERRA by pointing to a letter that TXD did not generate. Although the COBRA letter contains the words "Termination of Employment" under

the "Event" category, that alone does not prove that TXD terminated Mr. Dorris in violation of the USERRA. To the contrary, the "termination of employment" language is derived from the COBRA statutes, not from TXD or the USERRA. Even if TXD characterized Mr. Dorris as a "terminated" employee, that also would not be outcome determinative because the Department of Labor regulations make clear that, even if the employee is characterized as "terminated," he is still entitled to non-seniority rights and benefits as if he were simply on furlough or leave of absence.

Under 29 U.S.C. § 1161, "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan." A qualifying event includes "termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment." 29 U.S.C. § 1163(2). COBRA does not define termination. "Because termination is not defined in the statute, the court looks to COBRA's legislative history for assistance. The legislative history refers to termination as 'the separation from service of the covered employee (whether voluntary or involuntary).'" *Sigurdson v. Southmark-Nat'l Heritage, Inc.*, 1992 U.S. Dist. LEXIS 17118 (D. Kan. Nov. 3, 1992) (quoting S. Rep. No. 147, 99th Cong., 2d Sess. 3, *reprinted in*, 1986 U.S.C.C.A.N. 42, 323). Thus termination of employment does not necessarily indicate that the employee was fired or otherwise involuntarily dismissed. *See, e.g.*, *Chesnut v. Montgomery*, 307 F.3d 698, 700 (8th Cir. 2002) (discussing termination of employment as a qualifying event when the plaintiff left her job); *Carstetter v. Adams Cnty. Transit Auth.*, 2008 U.S. Dist. LEXIS 51874, 91 Empl. Prac. Dec. (CCH) P43, 256, at *37 (M.D. Pa. July 8, 2008) ("Termination of employment, whether voluntary [or] involuntary, is a qualifying event under COBRA.").

The interplay between the USERRA and COBRA is important. The USERRA provides that "[i]n any case in which a person . . . has coverage under a health plan in connection with the person's position of employment . . . and such a person is absent from such position of employment by reason of service in the uniformed services . . . the plan shall provide that the person may elect to continue such coverage as provided in this subsection." 38 U.S.C. § 4317. A Department of Labor Regulation interpreting the USERRA's provisions regarding health-plan coverage provides: "If a health plan coverage for the employee or a dependent was terminated by reason of service in the uniformed services, that coverage must be reinstated upon reemployment." 20 C.F.R. § 1002.1689(a).

Next, Department of Labor regulations directly address labeling an employee performing uniformed services as "terminated." Those regulations provide as follows:

> During a period of service in the uniformed services, the employee is deemed to be on furlough or leave of absence from the civilian employer. In this status, the employee is entitled to the non-seniority rights and benefits generally provided by the employer to other employees with similar seniority, status, and pay that are on furlough or leave of absence. Entitlement to these non-seniority rights and benefits is not dependent on how the employer characterizes the employee's status during a period of service. For example, if the employer characterizes the employee as "terminated" during the period of uniformed service, this characterization cannot be used to avoid USERRA's requirement that the employee be deemed on furlough or leave of absence, and therefore entitled to the non-seniority rights and benefits generally provided to employees on furlough or leave of absence.

20 C.F.R. § 1002.149.

Thus an employee who is characterized as terminated is "deemed [to be] on furlough or leave of absence, and therefore entitled to the non-seniority rights and benefits generally provided to employees on furlough or leave of absence." *Id.*

Aside from the COBRA letter, there is other evidence in the record that supports Mr. Dorris's claim that he was fired by TXD because of his military service.  Mr. Dorris contends he was told twice by TXD personnel he was terminated for failing to report for work.  There is paperwork produced internally by TXD that indicates Mr. Dorris quit his job, without noting that he left his position to report for active duty.  These communications occurred and the documents were generated in close proximity to Mr. Dorris's deployment.  Therefore, believing Mr. Dorris's evidence and drawing all justifiable inferences in his favor, as the Court is required to do at the summary judgment stage, the Court concludes Mr. Dorris has demonstrated there is an issue of fact as to whether TXD fired him for his military service.

USERRA then shifts the burden of proof to the employer, TXD, allowing TXD to avoid liability only if it can prove by a preponderance of the evidence that the actions it took would have been taken in the absence of Mr. Dorris's military status. Mr. Dorris alleges that, because he was fired, he was not on a roll of employees TXD provided to Foxxe at the time of the asset sale.  He claims he was entitled to be on that roll of employees so that, when he returned, he would immediately receive reasonable consideration from Foxxe as a potential employee.

The Court is not persuaded that Mr. Dorris was entitled to be on the list of TXD employees provided to Foxxe as a part of the asset sale.  Mr. Dorris argues that because TXD considered him a fired employee, as opposed to an employee serving a long-term military commitment, TXD did not include him on the list of TXD employees provided to Foxxe.  No evidence supports this contention.  In fact, the evidence in the record indicates that whether he was considered a fired employee or an employee serving a long-term military commitment, Mr. Dorris would not have been included on the list of TXD employees provided to Foxxe.

The Department of Labor regulations state that during uniformed service, the employee is "deemed to be on furlough or leave of absence" and is "entitled to the non-seniority rights and benefits generally provided to employees on furlough or leave." The undisputed evidence in this case demonstrates that TXD "did not consider individuals who were absent from employment due to a long-term military commitment to be current or active employees. In communications with third parties, TXD Services, LP would not include individuals serving long-term military commitments in any roster of current employees" (Dkt. No. 28-2, at 1). Thus, while Mr. Dorris was on active long-term military duty, TXD would not have considered him an active or current employee. He would not have made the list provided by TXD to Foxxe. That does not violate USERRA. *See* 20 C.F.R. § 1002.49.

In response to the evidence presented by TXD on this point, Mr. Dorris has not offered any evidence to show that TXD treated any similarly situated uniformed service members differently than he was treated. That is, he has not alleged that there were any similarly situated TXD employees who were allowed to remain on any list of TXD's active or current employees. Mr. Dorris also has not offered any evidence that TXD allowed employees on leave of absence or furlough to remain on any list of TXD's active or current employees.

The Court also notes that USERRA requires that the employee "shall, upon completion of a period of service in the uniformed services, notify the employer . . . of the person's intent to return to a position of employment with such employer." 38 U.S.C. § 4312. "In the case of a person whose period of service in the uniformed services was for more than 180 days, by submitting an application for reemployment with the employer not later than 90 days after the completion of the period of service." *Id*. The Court is therefore not persuaded that Mr. Dorris's

having "to go through an application process" when he applied to Foxxe creates liability as to TXD under USERRA.

TXD has demonstrated by a preponderance of the evidence that, whether Mr. Dorris was fired by TXD because of his military service or not, he would not have been included on the list of TXD employees provided to Foxxe as a part of the asset sale. Therefore, on these unique facts, the Court concludes TXD would have taken the same action, regardless of Mr. Dorris's military service, and cannot conclude that this alleged act proximately caused an adverse employment action. Accordingly, the Court finds that Mr. Dorris's being omitted from the list of TXD employees provided to Foxxe as a part of the asset sale does not constitute actionable discrimination in violation of 38 U.S.C § 4311.

In reaching this result, the Court does not discount the frustration, disappointment, and uncertainty that likely resulted from Mr. Dorris's not being on that list, but it does not give rise to liability under the USERRA. The Court notes that the USERRA does not permit a plaintiff to recover damages for mental anguish or pain and suffering. *Vander Wal*, 377 F. Supp. 2d at 746.

### IV. Conclusion

TXD has no potential liability under 38 U.S.C. § 4312 for failure to reinstate Mr. Dorris. TXD also is entitled to judgment as a matter of law on Mr. Dorris's discrimination claim under 38 U.S.C. § 4311. The Court grants TXD's motion for summary judgment, and Mr. Dorris's claims are dismissed with prejudice.

SO ORDERED this the 1st day of August, 2012.

*/s/ Kristine G. Baker*

_____
Kristine G. Baker
United States District Judge